Robert Jobe I'm appearing today on behalf of the petitioner Sohan Singh Nandha. Each day, four people die in police custody in India. This is on page 195 of the administrative record. A news article there reports, despite various sensitization programs for the police and the judicial personnel, 666 cases of custodial deaths were reported in a six-month period. Roberts. That begs the question, though, which I think is your burden, is it not, to establish that this person would suffer persecution based on his political opinion, on account of political opinion? No, Your Honor. The thrust of our case today and what we've argued in the briefs is about past persecution. And I agree we have the burden of demonstrating that the harm he suffered was on account of. Right. But under Grava, it's our view, certainly with regard to the third arrest, he's done that. And the reason I'm talking about the number of custodial deaths is because we have to show, under Grava, that the corruption or abuse that he was going to testify against is not an aberration. It's something that's more systematic. My point in referring to this news article is that. But what is it that makes him in particular a target of persecution as opposed to anybody else who gets rounded up for whatever reason and is in custody? Well, he has been arrested twice. He's been accused of being a terrorist, Your Honor. And he was arrested on that third occasion because of his willingness to testify against police, the police officials who had disappeared his cousin. Now, in Grava, this Court held that whistleblowing against corrupt government officials can constitute retaliation for such whistleblowing can constitute persecution on account of political opinion. And the Court went on to say that when the alleged corruption is inextricably intertwined with governmental operation, the exposure of such abuse of public trust is necessarily political. Certainly, it's our view that the retaliation that Mr. Nanda suffered because of his willingness to testify against the police officers who had disappeared his cousin, under Grava, it's necessarily political. Well, instead of Grava, why don't we apply DENU? You may know something about the DENU case. I do know something about DENU, Your Honor. But DENU, it seems to me, is only pertinent with regard to the second arrest. The second arrest, it seems to me, hinges upon the viability of this Court's precedent decisions in Blanco-Lopez, Maldonado-Cruz, Singh, Rotnam. DENU, in my view, is in some tension with that line of cases, and I concede that. Certainly, DENU doesn't override that line of cases, but there is certainly, indisputably, some tension between DENU and that line of cases. But with regard to the third arrest, the arrest that was provoked by Mr. Nanda's willingness to testify against the police officials who had disappeared his brother, I don't think DENU is at all relevant to that, because DENU concerns situations where the police have some legitimate law enforcement objective. But what happened with regard to this third arrest is Mr. Nanda's cousin was disappeared. The father of that disappeared man filed a complaint with the police, and Mr. Nanda agreed to testify against the police officers. So there was no legitimate police interest here. They had no legitimate law enforcement interest. Their interest with regard to that third arrest was actually contrary to any conceivable law enforcement objective, because they were attempting to prevent him from testifying in a judicial proceeding against the guilty police officers. So DENU would have no relevance at all to that third arrest. That third arrest, in our view, is that on account of question, is clearly controlled by Grava. And we're in sort of a difficult situation here, because strangely, even though Grava would seem to be controlling, neither the immigration judge nor the Board of Immigration Appeals even addressed that case. They didn't attempt to distinguish it in any way, despite the fact that Grava was specifically invoked in the notice of appeal to the Board. You can help me with a particular issue, the one involving credibility. I mean, it's not clear to me what we have here. Do we have an adverse credibility finding? Do we have no credibility finding? Do we have a favorable credibility finding? We don't have a favorable credibility finding. We don't have an unfavorable credibility finding. What is it that we have? We have sort of wandering around in the questionable wilderness as to whether he's credible or not. And the government seems to suggest that when push comes to shove, we've got to send this back for somebody under the Ventura rubric to make a credibility finding. So we can go from there. I think that's right. I mean, I think that the threshold question is whether the board's justifications hold water. If they don't hold water, then I agree with you that the proper thing is to vacate, send the case back, and then on remand, the board and the immigration judge are going to have to grapple with that credibility issue. How long ago did that hearing take place in front of the Congress? This one is not as dated as many of them. The hearing in this case is August 2003. Oh, so it's only four years old, roughly, by the time it gets back. Well, the Cabotti match doesn't seem to add up to anything. Okay. But the second and third incidents do is your point. Exactly. The second detention and bout of torture, we would say that that's controlled by this Court's precedent in Blanco-Lopez, Maldonado-Cruz, Singh, and Rotnam, which the government has really they haven't even attempted to distinguish that line of cases. Rather, their line of argument is to simply say that that line of cases is wrong. Now, the second one is the oil truck incident. Pardon me, Your Honor. The second one is the oil truck incident, is it not? Yes. That's right. I have a hard time with your argument on that. It just seems to me that if the border police or the at least the internal border stop a truck and discover explosives on it, isn't that a reasonable basis for detention and further investigation? Of course it is. But the issue here is whether a reasonable person would conclude under these circumstances that the police were also at least in part motivated by a perception of his political opinion. And I don't disagree with that. That's where we get back to Dinew, it seems to me, because the language in Dinew seems to suggest if and I certainly agree with you that a lot of our immigration cases are in enormous tension with each other. But at least Dinew says the question is whether the Petitioner is born as burden of showing that the purported criminal investigation has no bona fide objective, so that political persecution must have been the real reason for it. Right. Well, if you're driving a truck and you're stopped and they discover explosives in the truck, isn't that a reasonable criminal investigation? Of course it is. You know, my view is and, you know, we filed for rehearing on Dinew because I think it's absolutely inconsistent with this other line of cases. I can't reconcile Dinew with this other line of cases. Because if you look at Blanco Lopez, for example, same thing. The guy was accused of running guns for the Salvadoran guerrillas. He was detained. He was accused of being a guerrilla. The court found that it's necessarily at least in part on account of political opinion. Rotnam, exact same situation. This man was caught red-handed transporting weapons for the LTTE. He's accused of being an LTTE member, a terrorist. Court said it's necessarily the case that even though there was some legitimate interest in gathering evidence against the LTTE, it necessarily was at least in part also on account of political opinion. Now, those cases are almost on all fours with this particular case. Dinew is a little bit different because it wasn't somebody who was accused of being an anti-government militant like this case. So I think actually this line of cases is closer than Dinew. So we have to choose between Dinew and Rotnam in terms of what's the prevailing precedent in this circuit? I wish that I could find a way to reconcile these cases. I can't. You know, we argued to the court in Dinew that that line of cases was controlling. But my point is that even if you disagree with me about that second arrest, that doesn't dispose of this case because the third arrest is more clearly political. I mean, even if you're correct that that second arrest was not unaccounted, the third arrest most definitely was because what the police were doing in that third arrest was that they were attempting to prevent this man from exposing government abuses, that is, disappearances and killings of individuals in custody. And that, unquestionably, was on account of political opinion. I'll reserve the balance. You may do so, counsel. That's fine. We'll hear from the government. Ms. Maloney. May it please the Court, Sarah Maloney for the Respondent. The record evidence doesn't compel the conclusion that the petitioner established that he was or will be persecuted on account of a protected ground. Let's say we agree with you on incidents one and two. What about three, which is where he hangs his hat? Well, the third incident that occurred in December of 2001, the petitioner reported that three police officers came to his home, took him to a deserted building, beat him and told him he shouldn't testify in support of his uncle's complaint. During his detention, the petitioner told the police officers that he wanted to testify because, quote, my cousin cannot be found and I have to tell them he was arrested with me. This statement doesn't reflect that the petitioner was expressing a political opinion against police corruption. What was he expressing? Well, rather any number of things. It shows that perhaps he was asserting a desire to help assist authorities in locating his cousin. I guess the point is that there's no reason, much less a compelling reason, which under this standard of review the petitioner would need to show. But there's no reason to conclude from this statement that the police mistreatment of him arose from a desire to punish his political opinion against police corruption. The officers, these three officers' actions could just as easily be explained by a desire to keep the petitioner's cousin from being located or to protect these particular rogue officers from prosecution. And bad police officers do not make out a per se case of persecution. The petitioner has to show that the record evidence compels a conclusion. Are you saying that the government's position is that there was no connection whatsoever to his status with the Al-Qaeda party and his so-called terrorist connections and so on? Well, there's no evidence in the record. The petitioner didn't produce any evidence to show that on these three incidents, the Kabbali match, the explosives incident, and this, the witness incident, that the police harmed him because he was Sikh or because of his ADA political opinion. So there is no specific evidence. In fact, with regard to the second incident, the only evidence that the petitioner offered regarding his, the police officer's motives was the police statements that he was a terrorist and that he supported terrorists and that they were investigating this. And, of course, being a terrorist or otherwise engaging in criminal activity to achieve a political end is not a protected political opinion or activity. Therefore, the agency's decision that the petitioner didn't prove that those police officers on any of the three occasions were motivated to punish him for his religion or his political opinion is supported by substantial evidence. There's no showing that the police knew or even suspected that the petitioner supported an independent Khalistan. Thank you, counsel. Thank you. Do we have a minute or so? I just want to, if I can, direct the court to pages 100 and 101 of the record. This is where Mr. Nunn is describing what- 100 and 101? Yes, Your Honor. I said that to uncle's son has been lost in that part? Well, this is done at the bottom of page 100. The police are- You are working with terrorists. Exactly. You are a terrorist. They're beating him. And they say here, they say, you're testifying. You are working with such and such a person. We're not going to spare you. And they ask, why are you testifying? This is on the third time. Yes, the third arrest. They say you're working with terrorists. Exactly. So then they say, why are you testifying? He says, well, my uncle's son cannot be found, and I have to tell that he was arrested with me. And it was at that point that they said, quote, we're not going to spare you. You are working with terrorists. You are a terrorist. You're working with terrorists in the Mann Group. I mean, that, to me, it's not a legitimate law enforcement objective that they had at issue here. They're accusing this man of being a terrorist, somebody who sides with the militants, because he's willing to testify against police officers who are engaged in human rights abuses. That is very different from Dinu or even Singh. That's an imputation of political opinion. And with regard to this third arrest, we would say it's clearly on account of political opinion. And later on, on page 102, were you ever charged with a crime? Crime, was that true? I'm not working with terrorists. I was doing my business. I was not working with terrorists. But they imputed to him or accused him of being a terrorist. Precisely. That's our view. Thank you, counsel. The case just argued will be submitted for decision.
judges: Beezer, O'scannlain, Trott